IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

SCOTT MCLEAN,                    )
                                 )
     Plaintiff,                  )
                                 )
          v.                     )      1:14cv1398 (JCC/IDD)
                                 )
CITY OF ALEXANDRIA,              )
                                 )
     Defendant.                  )

**M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Defendant City of
Alexandria's ("the City's") Renewed Motion to Dismiss [Dkt. 37],
and Plaintiff Scott McLean's ("McLean's") Motion for Summary
Judgment [Dkt. 47].  For the reasons discussed below, the Court
will grant in part the City's Renewed Motion to Dismiss and
grant McLean's Motion for Summary Judgment.

**I. Background**

McLean claims section 10-4-13(a) of the City's Code
of Ordinances ("the Ordinance")--which prohibits parking a
vehicle upon any City street for the purpose of displaying the
vehicle for sale--is an unconstitutional content-based
restriction of his First Amendment right to commercial speech.
(Compl. [Dkt. 1] ¶¶ 28-32.)  The Court previously denied the
City's motion to dismiss, holding the case was not moot after
the City temporarily suspended enforcement of the Ordinance

1

pending City Council review.   (Mem. Op. [Dkt. 32]; Order [Dkt. 33].)   After public comment and a period of review, on March 14, 2015, the City Council repealed the Ordinance.

Two motions are now pending before the Court.  First, the City renews its motion to dismiss and argues again that the case is now moot because the City Council has repealed the Ordinance.  (Def.'s Mot. to Dismiss [Dkt. 37]; Def.'s Mem. in Supp. [Dkt. 38].)  McLean opposes this motion and contends the case is not moot because he still seeks nominal damages to redress the City's prior suppression of his First Amendment right to commercial speech, despite the recent repeal of the Ordinance.  (Pl.'s Opp'n [Dkt. 50].)  Second, McLean moves for summary judgment and argues he is entitled to judgment as a matter of law.  (Pl.'s Mot. for Summ. J. [Dkt. 47]; Pl.'s Mem. in Supp. [Dkt. 48].)  The City opposes Plaintiff's motion for summary judgment.  (Def.'s Opp'n [Dkt. 52].)  The Court will address each motion in turn.

## II. Motion to Dismiss

The City moves for dismissal under Rule 12(b)(1) of the Federal Rules of Civil Procedure and contends that the City's repeal of the Ordinance rendered this matter moot.  The sole issue before the Court in resolving this motion is whether the City's rescission of the law at issue moots this litigation. The Court finds that in this instance, repealing the Ordinance

2

partially moots the relief McLean seeks, and thus will grant the
City's motion to dismiss in part.

In filing this lawsuit, McLean seeks declaratory,
injunctive, and nominal relief. (See Compl. at 9.) McLean
concedes that any injunctive, or prospective relief, was
rendered "unnecessary" after the City repealed the Ordinance.
(Pl.'s Opp'n at 2.) In other words, McLean's request for
injunctive relief became moot. See Valero Terrestrial Corp. v.
Paige, 211 F.3d 112, 116 (4th Cir. 2000) (holding "statutory
changes that discontinue a challenged practice are usually
enough to render [Plaintiff's claim for injunctive relief] moot,
even if the legislature possesses the power to reenact the
statute after the lawsuit is dismissed.") (citation and internal
quotation marks omitted). The Fourth Circuit has recognized a
distinction in the mootness doctrine between cases seeking
injunctive relief and cases seeking compensatory or nominal
damages to vindicate First Amendment violations. See Rock For
Life-UMBC v. Hrabowski, 411 F. App'x 541, 550 (4th Cir. 2010).
"Valero, however, is inapposite to a claim brought under § 1983
to recover damages--either compensatory or nominal--resulting
from a prior suppression of speech. In this context, we have
held that even permanent remedial measures will not moot the
claim." Id. (citing Covenant Media of S.C., LLC v. City of
North Charleston, 493 F.3d 421, 429 n.4 (4th Cir. 2007) (citing

3

Henson v. Honor Comm. of the Univ. of Va., 719 F.2d 69, 72 n.5
(4th Cir. 1983)); Reyes v. City of Lynchburg, 300 F.3d 449, 453
(4th Cir. 2002)).

Here, in short, repealing the Ordinance does not moot
McLean's as-applied challenge to the Ordinance for which he
seeks nominal damages.  McLean's facial challenge to the now-
repealed Ordinance and request for injunctive relief are,
however, moot.  Rock For Life-UMBC, 411 F. App'x at 550-51 ("But
while the plaintiff's cause of action for damages remains live,
their claim that the policy was facially unconstitutional is
moot.").  Therefore, the Court will dismiss McLean's request for
injunctive relief and his facial challenge to the Ordinance.
The justiciable issue that remains is whether impermissible
chilling of McLean's First Amendment rights did in fact occur,
and whether McLean is entitled to nominal damages as a result.
Id.

### III. Motion for Summary Judgment

#### A. Legal Standard

Summary judgment is appropriate only if the record
shows that "there is no genuine issue as to any material fact
and that the moving party is entitled to judgment as a matter of
law."  Fed. R. Civ. P. 56(c); see also Anderson v. Liberty
Lobby, Inc., 477 U.S. 242, 247-48 (1986); Evans v. Techs.
Applications & Serv., Co., 80 F.3d 954, 958-59 (4th Cir. 1996)

4

(citations omitted).  In reviewing the record on summary judgment, "the court must draw any inferences in the light most favorable to the non-movant [and] determine whether the record taken as a whole could lead a reasonable trier of fact to find for the non-movant."  Brock v. Entre Computer Ctrs., 933 F.2d 1253, 1259 (4th Cir. 1991) (citations omitted).

Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute of material fact exists.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); see also Ray Commc'ns, Inc. v. Clear Channel Commc'ns, Inc., 673 F.3d 294, 299 (4th Cir. 2012) (stating the opposing party must "come forward with specific facts showing that there is a genuine issue for trial.") (citations and internal quotations omitted).  Specifically, in this Court on summary judgment, the parties are required to list the undisputed, or disputed, material facts in their briefs.  E.D. Va. Local Civil Rule 56(B).  "In determining a motion for summary judgment, the Court may assume that facts identified by the moving party in its listing of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion."  Id.  Indeed, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule

5

56(c), the court may consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2).

### B. Undisputed Material Facts

The City has failed to identify a genuine issue of material fact that must be decided at trial. In accordance with the Local Rules, McLean lists the undisputed material facts and supports those facts with citations to evidence in the record. (Pl.'s Mem. at 2-4.) In its opposition, the City does not properly address McLean's assertions of fact, but instead cites only to two potential witnesses "who have signed interrogatories stating that the [Ordinance] is designed to advance pedestrian and vehicular safety." (Def.'s Opp'n at 2.) Thus, for purposes of this motion for summary judgment, the Court deems McLean's statement of facts as undisputed and summarizes those facts below. Fed. R. Civ. P. 56(e)(2).

In October of 2012, McLean received a citation from the City for parking his 2008 Chevrolet Malibu on a City street for the purpose of displaying the vehicle for sale. McLean paid the $40 fine and parked the vehicle for the purpose of displaying it for sale in the neighboring jurisdiction of Arlington County until it was sold in February of 2013.

Over one year later in 2014, McLean wanted to sell his 2007 Dodge Ram 1500 Pickup Truck, but instead of parking it on a City street with a "For Sale" sign in the window, he filed this

case seeking prospective injunctive relief and nominal damages
for prior harm.  Five days after McLean filed this action, the
City suspended enforcement of the Ordinance pending review by
the City Council.  Between January of 2010 and October of 2014,
the City issued over 700 citations for violations of the
Ordinance, amounting to a cumulative total of approximately
$28,000 in fines.

It remains unknown why the Ordinance was originally
adopted in 1951, but the City "assumes, without limitation, that
the Ordinance was originally adopted for the general purposes of
promoting traffic and pedestrian safety." (Pl.'s Mem. Ex. 2 at
2.)  The City speculates that the act of parking a car on a City
street for purposes of displaying it for sale could constitute a
threat to the public health, safety, or welfare because such an
act could potentially:

> (1) cause pedestrians to enter into the
> roadway for the non-traffic purposes of
> viewing for-sale signs or otherwise
> inspecting the car in question, (2) distract
> drivers' attention away from the roadway,
> (3) cause drivers to slow down or stop in
> the roadway in order to inspect the car or
> any provided contact information, or (4)
> cause drivers to double-park in the roadway
> and exit their own cars for the purposes of
> inspecting the for-sale car or any provided
> contact information.

(Id. at 3.)  The City also concedes that "it is possible to
envision a scenario in which the act of displaying a car for

sale on a city street could constitute a threat to the City's aesthetic interests." (Id. at 6.)  The City is "not currently aware" of one traffic accident that was caused by a "For Sale" sign on a vehicle parked on a City street. (Id. at 7.)

On March 14, 2015, the City repealed the Ordinance, based at least in part on the recognition that "the decades-old restriction against parking a vehicle in the right of way for the purposes of sale is no longer necessary, given the significant changes in how used vehicles are sold and the existing, content-neutral controls already in place[] in many places in the City that already prevent a vehicle from being parking in the right of way for any purpose for an extended period of time." (Pl.'s Mem. Ex. 3 at 2.)

C. Analysis

"[T]he First and Fourteenth Amendments have never been thought to give absolute protection to every individual to speak whenever or wherever he pleases or to use any form of address in any circumstances that he chooses." Cohen v. California, 403 U.S. 15, 19 (1971).  The First Amendment does, however, protect various forms of expression and speech from attempted government regulation in varying degrees.  Adventure Commc'ns, Inc. v. Ky. Registry of Election Fin., 191 F.3d 429, 439 (4th Cir. 1999). Courts "apply the most exacting scrutiny to regulations that suppress, disadvantage, or impose differential burdens upon

8

speech because of its content." Id. (quoting Turner Broad. Sys. v. Fed. Commc'ns Comm'n, 512 U.S. 622, 642 (1994)) (colloquially known as strict scrutiny for content-based government regulation). However, "the regulation of commercial speech is subject to an intermediate degree of scrutiny." Adventure Commc'ns, 191 F.3d at 439 (citing Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York, 447 U.S. 557, 566 (1980)).

Commercial speech is any "expression related solely to the economic interests of the speaker and its audience." Cent. Hudson, 447 U.S. at 561-62 ("Commercial expression not only serves the economic interest of the speaker, but also assists consumers and furthers the societal interest in the fullest possible dissemination of information.") (citations omitted). "The First Amendment, as applied to the States through the Fourteenth Amendment, protects commercial speech from unwarranted governmental regulation." Id. (citing Va. Pharmacy Bd. v. Va. Citizens Consumer Council, 425 U.S. 748, 761-62 (1976)). This protection is not as great as protections afforded to other constitutionally guaranteed forms of expression, however. Cent. Hudson, 447 U.S. at 563 (citing Ohralik v. Ohio State Bar Ass'n, 436 U.S. 447, 456-57 (1978) ("The protection available for particular commercial expression turns on the nature both of the expression and of the governmental interest served by its regulation."). In Central

9

Hudson, the Supreme Court announced an intermediate scrutiny test to determine the validity of government regulation of commercial speech.  447 U.S. at 566.

First, "commercial messages . . . [must] accurately inform the public about lawful activity."  Id. at 563-64. Second, if neither misleading nor related to unlawful activity, the government "must assert a substantial interest to be achieved by restrictions on commercial speech."  Id. at 564. Third, "the restriction must directly advance the state interest involved; the regulation may not be sustained if it provides only ineffective or remote support for the government's purpose."  Id.  And fourth, "if the governmental interest could be served as well by a more limited restriction on commercial speech, the excessive restrictions cannot survive."  Id.

The City bears the burden of proving that the Ordinance survives intermediate scrutiny under Central Hudson. See Fla. Bar v. Went For It, Inc., 515 U.S. 618, 625-26 (1995) ("That burden. . . is not satisfied by mere speculation or conjecture; rather, a governmental body seeking to sustain a restriction on commercial speech must demonstrate the harms it recites are real and that its restriction will in fact alleviate them.") (citations and internal quotation marks omitted). Because the Court finds that the Ordinance does not survive intermediate scrutiny applicable to commercial speech, the Court

need not consider the more demanding standard of strict scrutiny for the content-based nature of the restriction.  See Educ. Media Co. at Va. Tech, Inc. v. Insley, 731 F.3d 291, 297-98 (4th Cir. 2013) (citing Sorrell v. IMS Health, Inc., --- U.S. ---, 131 S. Ct. 2653 (2011)) ("[L]ike the Court in Sorrell, we need not determine whether strict scrutiny is applicable here, given that, as detailed below, we too hold that the challenged regulation fails under intermediate scrutiny set forth in Central Hudson.").  The Court now turns to each factor under Central Hudson.

In reaching the conclusion that the Ordinance unconstitutionally restricted commercial speech, the Court is guided by the Sixth Circuit's opinion in Pagan v. Fruchey, 492 F.3d 766 (6th Cir. 2007).  There, an individual posted a "For Sale" sign on his vehicle and left it parked on a public street in front of his residence in Glendale, Ohio.  Id. at 769.  A police officer notified the individual that he was in violation of a village ordinance[1] that prohibited parking a vehicle on a

---

[1] "It shall be unlawful for any person to stand or park any vehicle, motorized or towed, upon any public street, road, or highway within the village or upon any unimproved privately owned area within the village for the purpose of: (A) Displaying it for sale, except that a homeowner may display a motor vehicle, motorized or towed, for sale only when owned and titled to said homeowner and/or a member of said household, and only when parked upon an improved driveway or apron upon the owner's private property; (B) Washing, maintaining or repairing such vehicle except repairs necessitated by emergency; and (C) any

public street to display it for sale.  Id.  After attempting to
resolve his dispute with the village to no avail, the individual
filed suit alleging violation of his constitutional rights and
challenging the village ordinance.  Id.  The parties agreed that
the posting of "For Sale" signs on cars is commercial speech
protected by the First Amendment.  Id. at 771.  The issue before
the Sixth Circuit was whether the village established that the
ordinance "directly and materially advances its regulatory
interests and . . . that it has drawn the restriction narrowly."
Id.

        The Sixth Circuit reversed the district court's grant
of summary judgment in favor of the village and held that the
ordinance was an unconstitutional restriction of commercial
speech, absent any evidence that the village's interests of
traffic and pedestrian safety and aesthetic concerns were
advanced by the ordinance in a direct and material way.  Id. at
778.  As evidence of the village's interests of safety and
aesthetics, the village offered an affidavit from the police
chief and asked the court to rely on "common sense" and
"obviousness" for why the regulation of speech was necessary.
Id. at 773-774.  But the Sixth Circuit found that there was no

---

advertising."  Glendale Traffic Code § 76.06.  The Court did
determined that whether the conduct at issue was reached by
subsection (A) or (C) was "not germane" to the resolution of his
"as applied" First Amendment challenge.  492 F.3d at 770 n.2.

actual or direct evidence in the record that the ordinance promoted safety and aesthetics.  Id. at 775.  Instead, the Court noted that it was the village's "obligation to provide something in support of its regulation" other than conjecture from the police chief and its requested reliance on common sense and obviousness, holding that "it seems no great burden to require [the village] to come forward with some evidence of the threat or particular concerns" that is alleviated by the ordinance. Id. at 775, 778 (emphasis in original).  The same is true here in the record now before the Court on summary judgment.

First, there is no dispute that McLean's "For Sale" sign accurately informed the public about lawful activity. Central Hudson, 447 U.S. at 563-64.  Second, assuming the City has a substantial interest in promoting traffic and pedestrian safety and regulating aesthetics, id. at 564, the City ultimately fails to carry its burden under Central Hudson because there is no evidence in the record that (1) the Ordinance directly advanced this interest in safety and aesthetics, and (2) the Ordinance was not broader than necessary to accomplish the City's goals.  Id.

In a manner very similar to the village in Pagan, here, the City relies on sworn interrogatory responses from the City's Transportation Director and the Traffic Division Chief of the City's Department of Transportation stating that the

13

Ordinance is designed to advance pedestrian and vehicular safety.  (Def.'s Opp'n at 2.)  Additionally, the City speculates as to why the Ordinance was enacted in the first place, and hypothesizes about various scenarios where displaying a "For Sale" sign on a vehicle parked on a public street could constitute a threat to the public health, safety, or welfare. (Pl.'s Mem. Ex. 2 at 2.)  But just like in Pagan, there is no direct evidence in the record to support the City's conclusion that the Ordinance directly advanced the City's interests in safety and aesthetics.  Central Hudson, 447 U.S. at 564. Indeed, the City is "unaware" of even one traffic accident that has ever been caused by conduct that violates the Ordinance. (Pl.'s Mem. Ex. 2 at 7.)  To meet its burden under the third prong of Central Hudson, the City cannot rely on assumptions, speculation, or conjecture.  See Went For It, 515 U.S. at 625-26; see also Pagan, 492 F.3d at 775-78.  Instead, it is the City's burden to prove that the Ordinance addressed threats to safety and aesthetics that were "real and that its restriction [did] in fact alleviate them to a material degree."  Edenfield v. Fane, 507 U.S. 761, 771 (1993).  This, the City has failed to do.

   Similarly, there is no evidence in the record that the Ordinance was reasonably tailored to accomplish the City's interests, as required under the final prong of Central Hudson.

14

447 U.S. at 564.  "[I]f there are numerous and obvious less-burdensome alternatives to the restriction on commercial speech, that is certainly a relevant consideration in determining whether the 'fit' between ends and means is reasonable." City of Cincinnati v. Discovery Network, Inc., 507 U.S. 410, 418 n.13 (1993).  Another district court addressing this very issue found a similar ordinance was broader than necessary to accomplish the city's interests.  See Burkow v. City of Los Angeles, 119 F. Supp. 2d 1076, 1081-82 (C.D. Cal. 2000).  Indeed, in repealing the Ordinance, the City itself recognized that "the decades-old restriction against parking a vehicle in the right of way for the purposes of sale is no longer necessary, given the significant changes in how used vehicles are sold and the existing, content-neutral controls already in place[] in many places in the City that already prevent a vehicle from being parked in the right of way for any purpose for an extended period of time."  (Pl.'s Mem. Ex. 3 at 2 (emphasis added).)  The Court need not belabor the point by addressing potential alternatives to the Ordinance, as it has been repealed, and the City admits that less restrictive alternatives already exist. Accordingly, the City has failed to meet its burden, and the Court finds that the Ordinance was an unconstitutional restriction on McLean's right to commercial speech under the First Amendment.

Without any material fact in dispute, the Court will enter judgment in McLean's favor and award nominal damages.  See Covenant Media of S.C., LLC v. City of N. Charleston, 492 F.3d 421, 428-29 (4th Cir. 2007) ("[T]he City's application of an unconstitutional ordinance . . . is redressable at least by nominal damages.") (citing Carey v. Piphus, 435 U.S. 247, 266 (1978); see also Comm. for First Amendment v. Campbell, 962 F.2d 1517, 1526-27 (10th Cir. 1992) ("If proven, a violation of First Amendment rights concerning freedom of expression entitles plaintiff to at least nominal damages.") (citations omitted). The City contends that McLean is not entitled to nominal damages under Reyes v. City of Lynchburg, 300 F.3d 449 (4th Cir. 2002). But there, the Fourth Circuit expressly recognized that "[n]ominal damages may be available in a § 1983 case if a plaintiff was deprived of an absolute right yet did not suffer an actual injury."  Id. at 453 (citing Carey v. Piphus, 435 U.S. 247, 266 (1978)); see also Rock for Life-UMBC, 411 F. App'x at 549 ("We have recognized that an actual chilling of protected speech is a discrete infringement of First Amendment rights that gives rise to a claim under § 1983 for at least nominal damages.") (citing Reyes, 300 F.3d at 453).  And even though the Fourth Circuit ultimately concluded that Reyes was not entitled to nominal damages, it did so after deciding that his First Amendment argument had "no merit," and instead the Court focused

16

only on Reyes' due process argument under the Fourteenth
Amendment.  Reyes, 300 F.3d at 455 n.8 ("Reyes claims that his
First Amendment right to free speech had been sufficiently child
to constitute a violation.  Under the facts of this case, we
find no merit to this claim.").  In the end, the Court
determined that Reyes was "not deprived of any liberty interest
[under the Fourteenth Amendment] because the ordinance was later
held to be unconstitutional" and thus was not entitled to
nominal damages.  Id. at 457.  Here, the Court has found that
the Ordinance was an unconstitutional restriction on McLean's
right to commercial speech under the First Amendment, and
therefore Reyes is not controlling.  Accordingly, the Court will
award nominal damages for the chilling effect the
unconstitutional Ordinance had on McLean's First Amendment right
to commercial speech.  Covenant Media, 492 F.3d at 428-29.

### IV. Conclusion

For the foregoing reasons, the Court will grant in
part the City's motion to dismiss and grant McLean's motion for
summary judgment.

An appropriate Order shall issue.

|  | /s/ |
|---|---|
| May 5, 2015 | James C. Cacheris |
| Alexandria, Virginia | UNITED STATES DISTRICT COURT JUDGE |

17